## No. 6399.

### MRS. MARY MURPHY vs. FACTORS' AND TRADERS' INSURANCE COMPANY ET AL.

#### ON THE MOTION TO DISMISS.

It is no good cause of complaint for the Appellant and no ground of dismissal, that three appeals taken by different parties in the same case, be embraced in one Transcript.

Insufficient service of citation of appeal, not attributable to the Appellant, should not cause the dismissal of the appeal.

#### ON THE MERITS.

Under the late bankrupt law of the United States, the property of the bankrupt could legally be sold free of encumbrances, by order of the Federal Court, provided the mortgage creditors were properly notified to show cause why it should not be done.

In default of such notice, the mortgages or privileges on the property were unaffected by the sale.

Therefore, when the mortgage creditor, who was notified, bought the property at the sale ordered by the Court, his mortgage was extinguished by confusion, but he took the property subject to the mortgage of the creditor, who was not notified to show cause why the property should not be sold free of encumbrances.

Such purchaser is a third possessor, not liable to a personal judgment on behalf of the mortgage creditor, but against whom the latter has an action of indemnification for the value of any part of the thing mortgaged, which has been deteriorated or taken away, if the property is not sufficient to satisfy the mortgage.

The purchaser in such case, is not entitled to be reimbursed the taxes on the property and other expenses paid by him, with priority over the mortgage creditor with the pact *de non alienando*. Under the pact, the vendee has no better right than the vendor, the original mortgagor.

APPEAL from the Fifth District Court for the parish of Orleans. *Cullom, J.*

*J. D. Coleman* for Plaintiff and Appellee.

*Gibson, Hall* and *Montgomery* for the Insurance Company, Defendant and Appellant:

#### ON THE APPLICATION FOR REHEARING.

A note drawn to the order of the maker, and by him indorsed in blank, secured by act of mortgage, with the clause. "and to enure to the use and benefit of any and all future holder or holders" is transferred by delivery from hand to hand, and a transaction made in good faith with such holders concerning such note is binding and valid, possession protecting the sale, pledge or other disposition thereof. The possession of such paper carries the title with it to the holder. The possession and title are one and inseparable; 2 Wal. 110, Murray vs. Lardner, 20 An. 264; Doll vs. Rezitti, 26 An. 15; Giovanorich vs. Citizens' Bank, 2 Parsons on Bills, 272, 279; 20 How. 843; 22 How. 96; 18 An. 192; Jackel vs. Fried 20 An. 72; Wheeler vs. Maillot, 20 How. 343; Louque's Digest, page 88.

*Singleton & Browne* for Leeds & Co., Defendants and Appellants.

### On the Motion to Dismiss.

The opinion of the Court was delivered by

WYLY, J.   From the final judgment in this case, signed on 3d July, 1876, three appeals were taken, viz: One by the Factors' and Traders' Insurance Company, one by C. J. Leeds & Co., and one by Percy Roberts, assignee—all parties to this litigation.

Plaintiff, appellee herein, moves to dismiss the appeals:

1st.   On the ground that citations of the appeals were served on her attorney, and not on herself, she being a resident of New Orleans.

2d.   Reserving the benefit of this objection, and without in any manner waiving it, she objects on the ground that Marshall J. Smith and other necessary parties have not been made parties to the appeal.

3d.   That the three appeals are improperly embraced in the same transcript.

There can be no valid objection to the appeals herein being contained in the same transcript.   Certainly the interest of plaintiff has not been impaired thereby.   They are all for the settlement of this litigation.   Marshall J. Smith, and E. E. Norton, assignee, have filed an appearance in this Court which, of course, makes them parties, if they are necessary parties.   .

As to the objection that citations of the appeals were served on the attorney of plaintiff, and not on herself, we will remark that the record satisfies us that it was the fault of the sheriff and not of appellants, who, in their petitions for appeals, prayed that plaintiff be cited.   '

In the case of the Widow and Heirs of Julien Seghers vs. Nevil Soule and Albert Gaillard, decided in January, 1876, and not yet reported, this Court said:   "Appellants were not bound to mention the names of the appellees in their petition for appeal.   They prayed that plaintiffs (who are appellees) be cited.   This was sufficient.   It was the duty of the clerk to issue citations to all the plaintiffs mentioned in the petition, and it was the duty of the sheriff to serve the citations.   No appeal should be dismissed unless the fault is attributed to the appellants."   See Act 45 of Extra Session, of 1870, section 11 ;  17 La. 515; 2 An. 769; 12 An. 332; 13 An. 259; 14 An. 698; 16 An. 303; 21 An. 669.

As appellants have caused plaintiff to be served with citations since this motion was filed, it will not be necessary to continue the case for service of citations.

The motion to dismiss is denied.

---

### On the Merits.

The opinion of the Court was delivered by

LEVY, J.   The plaintiff, Mrs. Mary Murphy, alleges in her petition, .
that she is the legal holder and owner, before maturity, of two promissory

notes, each for $10,000, signed by Paul Cook and Justin Vairin, Jr., *in solido*, dated March 18th, 1870, payable one year after date to the order of said maker and by them endorsed, which notes bear eight per cent. per annum interest from maturity; two other notes of same date and maturity, each for the amount of $10,000, held by the Factors' and Traders' Insurance Company, together with those above described, were secured by a special mortgage of like date with said notes, executed by said Cook and Vairin, on certain lots and buildings thereon together with the machinery, fixtures, etc., situated in the City of New Orleans, and known as the Orleans Refinery; that, on the 21st of February, 1871, Cook and Vairin, individually and as members of the firm of Paul Cook & Co., were adjudged bankrupts by order of the United States District Court of Louisiana; and in these proceedings in bankruptcy, Marshall J. Smith was chosen trustee by the creditors who participated in said proceedings and confirmed as such by said United States District Court; that said bankrupts surrendered, in bankruptcy, a part of their estate, the said property mortgaged as aforesaid, to secure the payment of said notes; that, on motion of said trustee, the said United States District Court ordered the sale of said mortgaged property to be made at public auction, which was accordingly done on the 21st of December, 1872, and said property was, by the auctioneer, adjudicated to C. J. Leeds & Co., Lagan & Mackison, John Hennessey, T. A. Archer, as liquidator of the firm of Marshall J. Smith & Co., and the Factors' and Traders' Insurance Company, and on the 20th of June, 1873, by notarial act, said property was sold and conveyed to the Factors' and Traders' Insurance Company, said company thereby becoming sole owner thereof. She alleges that this sale was made subject to her mortgage as aforesaid, and the said company became liable to her in the full amount of said notes, held by her, with special mortgage on said property, and that she is entitled to have said property seized and sold to pay her said mortgage, interest and costs, together with five per cent. on the amount sued for as attorney's fees, as stipulated in the act of mortgage. She avers that said mortgage act contained the pact *de non alienando*, and that by virtue of the proceedings and purchase by said Insurance Company the mortgage, to the extent of the interest held therein by the Factors' and Traders' Insurance Company to secure the payment of the two notes held by it, became extinguished by confusion, and that said mortgage has and is of full force and effect only to the extent of plaintiff's interest therein, to secure the payment of the notes aforesaid, held by her, with interest, costs, attorney's fees, etc. She further alleges that she was in no manner a party to the proceedings in bankruptcy, and that she had no knowledge of and took no part in any of the proceedings above recited, and cannot be affected or concluded thereby. She finally prayed that

·the Factors' and Traders' Insurance Company, E. E. Norton, assignee in bankruptcy of Paul Cook & Co., and of Cook and Vairin and Marshall J. Smith, trustee of the creditors of the bankrupts, be cited to defend this suit, and that there be judgment in her favor and against the said defendants, *in solido*, for the aforesaid sum of twenty thousand dollars, with interest, attorney's fees and costs as claimed, and decreeing that said mortgage on said property to the extent of the interest which the said Insurance Company may have had by virtue of its ownership of the two notes before mentioned, be declared to have been extinguished by confusion, and recognizing and enforcing plaintiff's mortgage on said property, and that the same be sold to pay the debt due plaintiff.

E. E. Norton filed an exception of no cause of action as against him, which was sustained.

The Factors' and Traders' Insurance Company, in their answer, admit that the proceedings in bankruptcy were had as alleged in the petition, and that they were the holders and owners of the two notes of $10,000 each, and secured by mortgage on said property as set forth, which were concurrent with these held by plaintiff. They aver that, pursuant to an agreement of the creditors and the order of the U. S. District Court, the said mortgaged property was, on the 21st of December, 1872, offered for sale and adjudicated to Leeds & Co., Lagan & Mackison, John Hennessey, T. A. Archer and respondents, for $45,000; and that solely for the mutual accommodation of said parties, subsequently, on the 23d June, 1873, without any valuable consideration whatever, the title thereto was taken in the Factors' and Traders' Insurance Company, and it was agreed, by the adjudicatees, that said company should, for their joint account, discharge all costs, expenses, charges, taxes and other claims on said property. That the parties, to whom the property was adjudicated, were all either privilege or mortgage creditors, and in consideration of this they bid in the property, in default of a bid equal to the aggregate amount of their claims, and that the sole reason therefor, aside from mutual convenience, was the belief that, each party to the agreement was either a privilege or mortgage creditor or represented such; that all the privileges and mortgages upon the property were represented, and that without this belief there was no motive for said agreement and none such would ever have been entered into. They specially aver that it was the belief of all parties to said agreement, adjudication and sale, that T. A. Archer held and represented the two notes of Mrs. Murphy now sued on, and that it was on her behalf alone that he became a party to said transactions.

They aver that they had reason to believe and did believe that said Archer did in reality act as the agent of Mrs. Murphy; that he made known to her the steps which were being taken in her behalf; that he fre-

quently advised with her; that she had full knowledge of all that was being done and freely assented thereto, and that she was as fully bound as if she had been personally present acting for herself, and if this had not been the belief of defendants no such agreement would ever have been entered into. That said Archer is erroneously made to appear as liquidator, representing the firm of M. J. Smith & Co., which said firm never had been and was not at the time of sale either a privilege or mortgage creditor of Cook & Co., and therefore had no direct interest in said transactions. That the notes of plaintiff had been for a long time and were at the date of the transaction in possession of Marshall J. Smith & Co., the only qualified attorney in fact of Mrs. Murphy. That they dealt with Archer under the conviction that he was the duly authorized agent of plaintiff, and as she had full knowledge of his acts in the premises, and made no objection thereto, she should be bound thereby and be decreed to be the owner of her proportionate share of the said property. They further represent, that if the Court shall determine that said Archer was not the duly authorized agent of Mrs. Murphy, and she is not bound by his acts, then there was great and serious error of fact to their prejudice, as to the character or quality in which he was acting; that defendants acted from a mistaken belief as to his real capacity, and are entitled by reason of said error to a rescission of said adjudication and sale, or that, otherwise they will be made the innocent sufferers of irreparable injury and loss; that acting in the belief that all the privilege and mortgage creditors, including the plaintiff, had been duly represented in said transactions, and were bound and concluded, and pursuant to the above mentioned agreement, they, for the benefit and advantage of all parties, did defray all the costs incident to said proceedings, and have since paid out large sums of money on said property for its care and preservation and for taxes due to the State and city, amounting in the aggregate to $11,454 83, and that they are entitled to a privilege and preference upon said property over all other creditors, for said amount, with interest from 17th December, 1873, when said payments were made. They further aver that they are not the true and legal owners of all of said property, but that whilst the title is in their name, the real owners are themselves and their co-adjudicatees, and they should be called in to defend their interests. They deny that they are personally bound to plaintiff, but that any claim which she may establish, will attach solely to the property in question or its proceeds, and she can only look to these for its settlement. They call in warranty their co-adjudicatees. They pray that there be judgment recognizing said T. A. Archer as the agent of plaintiff in said sale and that she be bound thereby; that she be recognized as one of the co-owners of said property in her just proportion, subject to her proportion of the amounts paid by respondents for costs,

taxes, etc., or that she have judgment only for her proportionate share of the net proceeds of the sale of said property, or if the Court shall determine that said Archer was not the agent of said plaintiff, that, by reason of said error of fact, the sale shall be rescinded and the property be held as it now stands merely for the purpose of selling it, to the end that the proceeds arising therefrom may be distributed as follows : 1st, that defendants be reimbursed the sum of $11,454 83, expended by them for the benefit of all parties concerned.    2d, that the balance therefrom be distributed between the privileged and mortgage creditors according to their rank in the same manner as though the property had been regularly sold by virtue of proper legal proceedings by said parties against Paul Cook & Co., the original debtors, and that all the privileges and mortgages be recognized as in full power and effect.    The co-adjudicatees, Lagan & Mackison, through Percy Roberts, assignee, John Hennessey, Leeds & Co. and T. A. Archer, called in warranty, also filed their answers, Archer averring that he was, either expressly or impliedly, authorized to represent and act for Mrs. Murphy in the transactions set forth in the petition and proceedings, and the others setting up their privileges and adopting the allegations of the answer of the Factors' and Traders' Insurance Company.    Marshall J. Smith, trustee, also answered, denying any liability on his part, and denying that there was cause of action against him.

There was judgment in favor of plaintiff, decreeing the extinction by confusion of the mortgage securing the notes held by the Factors' and Traders' Insurance Co., recognizing the mortgage as securing plaintiff's debt, decreeing that plaintiff recover of Factors' and Traders' Insurance Co. the amount of the notes with interest claimed, attorney's fees at five per cent on the principal claimed and costs of suit, or, in default of such payment, that they deliver up all the mortgaged property to be sold to satisfy the judgment, rejecting the claims and demands set up by the company and the parties called in warranty by them, and dismissing the suit as against M. J. Smith, trustee, and E. E. Norton.

From this judgment all the parties defendant have appealed except Smith and Norton.

This full statement of the pleadings is necessary in order to comprehend fully the grounds of plaintiff's action and defendant's grounds of defence.

The questions for solution and decision are as follows :

1st.    Was Mrs. Murphy represented in the matters of the bankrupt proceedings, the adjudication of the trustee's sale and the subsequent sale to Factors' and Traders' Insurance Company and bound thereby ?

2d.    Was the mortgage claim of the Factors' and Traders' Insu-

rance Company, arising out of the two mortgage notes of Paul Cook & Co. held by them, extinguished by confusion taking place on their purchase of the mortgaged property?

3d.  If Mrs. Murphy's mortgage exists, is she entitled to personal judgment against the Factors' and Traders' Insurance Company for the amount of the notes held and owned by her with interest, costs and attorney's fees, with the right to seize and sell the mortgaged property, and is said company bound to her, and can she execute her judgment against them for any balance due her on her notes, if the proceeds of sale of the property should not be sufficient to satisfy her judgment?

4th.  Should the five per cent for attorney's fees be allowed upon the principal and interest due on her two notes?

We will decide this case exclusively on the record as it stood before the District Court, when the judgment appealed from was rendered, without prejudice to the rights, if any, which may have since accrued to the parties litigant.

1st.  The evidence contained in the record fails to satisfy us that Mrs. Murphy was represented in the bankrupt proceedings as to Paul Cook & Co., the adjudication at the trustee's sale, the subsequent sale to the Factors' and Traders' Insurance Company, or that she had notice of any of these matters.   Without the fulfilment of these requirements or her subsequent ratification, she cannot be legally bound and her mortgage rights have not been destroyed or impaired.

Mrs. Murphy was certainly not personally notified of any of the proceedings in bankruptcy ; no written or special authority to Marshall J. Smith to represent her in these proceedings as a creditor of the bankrupts is to be found in the record, nor is there satisfactory proof to establish that such authority was granted by her to any one.   On the contrary, her averments that she had no notice are not disproven— and the fact of notice to her should be affirmatively established by those claiming or asserting this fact.

The order of the U. S. District Court for the sale of the property free of all incumbrances, could not divest her mortgage rights or privileges without the notice contemplated and required by the bankrupt law. In Willard vs. Brigham, 25 A. 600, this Court held: "If the mortgagee is not made a party to the proceedings to sell the property free from all incumbrances, his rights will be unaffected by the sale."

" The application for a sale of property, free from incumbrances, must state what persons have liens, incumbrances or interests therein, and notice must be given to all persons having liens or incumbrances on the property."  Bump on Bankruptcy, 155.

In the case above cited from 25 An. 600, it was held as follows : "The important questions are; First, whether the United States Court, sit-

ting in bankruptcy, had authority, under the bankrupt law of 1867, to order the sale of the property free of all incumbrances ? Second. If the Court had the authority, have the requirements of the law been observed so as to remove the special mortgage set up in this case ? On the first point we find no difficulty. The Supreme Court of the United States have frequently held that the property of the bankrupt may be sold free of incumbrances by order of the bankrupt courts, and the same has been decided by this Court. In order, however, to sell property free of incumbrances, the assignee must apply to the bankrupt court for an order to that effect, and must set forth the facts that justify the order, that the judge may decide whether the application should be granted. As this proceeding specially affects the rights of the secured creditor, he must be properly notified and summoned to appear and protect his interests. This is done by passing an order to show cause and directing that a copy of such order and the petition be served upon him. *Bump on Bankruptcy, 6th Ed., p. 151, and authorities there cited.* In the case before us we do not find that Norsworthy was properly notified, or was legally made a party to the proceeding resulting in the order to sell the property in question frée of his prior mortgage. Not being a party to the proceedings, his rights are unaffected thereby. The property has passed out of the hands of the bankrupt court ; it was therefore useless to cite the assignee." This case having been taken to the Supreme Court of the United States on a writ of error, that tribunal affirmed the judgment of this Court, and in the opinion rendered by Justice Clifford, as the organ of the Court, he said : "Such sales may be made without notice to the secured creditor, but if the assignee desires to sell the property free of incumbrances, he must obtain authority from the bankrupt court, and must see to it that all the creditors having liens on the property are duly notified, and that they have opportunity to adopt proper measures to protect their interests." 23 Wallace, 128 ; King vs. Bowman, 24 An. 506 ; 10 Blatchford, 515 ; 20 Wallace, 201 ; 24 Howard, 205.

The record, as we have stated, disclosing no legal notification, or summons to Mrs. Murphy, a secured creditor, the decisions above cited fit most aptly this case and are controlling in their effect.

We are, therefore, led to the conclusion that Mrs. Murphy being no party to the proceedings whereby the order of sale was obtained, her rights were unaffected thereby. We next consider the effect of the adjudication, and then the subsequent sale to the Factors' and Traders' Insurance Company. At the trustee's sale of the mortgaged property, it was adjudicated to the following persons (for the sum of $45,000, on the terms of one-third cash and the balance payable in one and two years, with eight per cent interest on the credit terms): the Factors' and

Traders' Insurance Company, Messrs. Leeds & Co., Lagan & Mackison, John Hennessey, T. A. Archer, Liquidator of Marshall J. Smith & Co.; and about six months after the adjudication, by a notarial act and agreement, the above-mentioned adjudicatees relinquished all their rights, title and interest, in the property to their co-adjudicatee, the Factors' and Traders' Insurance Company, and the terms of the original sale were changed and in lieu thereof the terms were made cash. It will be perceived that in none of the proceedings and acts does the name or interest of Mrs. Murphy appear, nor is there the slightest reference to any of the parties as representing her as her agent or attorney in fact; and there is not to be found in the full and complete record any written document or authority from her to any person, consenting to any sale, agreeing that any sale should be made of the property, free of incumbrances, authorizing the purchase of the property for her or ratifying the adjudication, acknowledging or recognizing the adjudication to T. A. Archer as being for her or her benefit, consenting to the change of terms of sale or ratifying or assenting to the subsequent sale to the Factors' and Traders' Insurance Company, or in any manner connecting her with the acts of T. A. Archer, the Liquidator of M. J. Smith & Co. It is only necessary to assert the elementary principle that contracts for the acquisition or alienation of real estate must be in writing, and authority to an agent to acquire or dispose of such property must be originally in writing or subsequently ratified in writing. There is not only no such instrument in writing, but in none of the proceedings or even authentic acts, is it alleged or stated, or are any expressions whatever used, which tend to disclose the creation or existence of any agent representing Mrs. Murphy in the bankrupt proceedings, the adjudication, or the transfer to the Insurance Company. Whatever may have been the individual belief of any of these parties in regard to the participation of Mrs. Murphy in these transactions or her assent or ratification thereof through the agency of Smith or Archer, there seems to have been a marked and apparently studious abstinence from the use of any expression identifying her with the acts of these persons, and nothing in all the solemn acts which in the remotest degree connect her therewith. After the most patient and careful investigation of the record, the most patient consideration of the arguments contained in the able and elaborate briefs filed, we are unable to discover anything which binds Mrs. Murphy, as a co-owner of the property conveyed to the Factors' and Traders' Insurance Company, or which can limit her rights under her mortgage to a *pro-rata* participation in the proceeds of the sale of the property. The mistaken belief and error of fact which the Insurance Company alleges it has fallen into, cannot be visited upon the plaintiff, and while not legal, it would surely be unjust to sacrifice

her rights and make her a vicarious expiator of the mistakes of the company. Mere considerations of equity may be invoked where the law is silent or its construction obscure or doubtful, but where the plain letter and spirit and reason of the law stand forth in bold relief, courts cannot close their ears to its imperative mandates or blind their eyes to its plain teachings. We think the grounds for setting aside the adjudication and sale by reason of the alleged error of fact, are not sufficient in this case to justify such action on our part. C. C. Arts. 1826, 1847, 1823, 1836 ; 22 An. 14.

. Having disposed of the first question and its several branches the others require no lengthy discussion.

When the adjudication was made to the Insurance Company and its co-adjudicatees, it carried the property free of the incumbrances in favor of all the parties who had assented to the sale or had been properly or duly notified of the proceedings which provoked it, and burdened with the incumbrance in favor of the plaintiff. Extinguishment, by confusion, of the mortgage and privileges in favor of the adjudicatees, took place at once, and the Factors' and Traders' Insurance Company, to whom the sale was subsequently made by agreement among the adjudicatees, holds the property subject to and affected by the mortgage rights of the plaintiff, Mrs. Murphy. 2 R. 201; 2 An. 114; 28 An. 845.

We do not think that the plaintiff is entitled to a personal judgment against the Insurance Company, but her rights are limited as hereinafter prescribed to the mortgaged property, on which she may enforce her judgment in satisfaction of her mortgage notes. We have before stated that the property was sold subject to the mortgage in favor of the plaintiff; to that she must be confined. 4 L. 451.

The record discloses that, after the adjudication and the sale to the Factors' and Traders' Insurance Company, the company sold the machinery, fixtures, etc., which had been specially mortgaged. When the company acquired this property it came to them burdened with the mortgage in favor of the plaintiff, and they held it and all of it, as third possessors, subject to that mortgage. It is clear to us, therefore, that this company is, under article 3407 of our Civil Code, to the extent hereafter stated, liable to the plaintiff on account of the mortgaged property disposed of by it. "The deteriorations, which proceed from the deed or neglect of the third possessor to the prejudice of the creditors who have a privilege or mortgage, give rise against the former to an action of indemnification." Code Napoleon, 2175.

"A third possessor may make any change he pleases in buildings on the property, but if he diminish its value thereby, he will be responsible to the mortgagee." 5 N. S. 187; 6 N. S. 114; 2 An. 365; 19 L. 478.

The machinery and fixtures were part of the mortgaged property

immovable by destination, and the mortgage with the pact *de non alienando* contained therein rested upon all the property, and the third possessor held it with full knowledge of and subject to the incumbrances which burdened it, and if the property remaining has been deteriorated by his deed, he is liable in an action of indemnification, and in this case the right to proceed by such action must be reserved to the mortgage creditor.

We are of opinion that the company is not entitled to have the amount claimed for taxes, expenses, etc., paid by it, constitute a charge upon the property with priority over or even concurrent with plaintiff's claim. "A purchaser of property subject to a mortgage containing the clause *de non alienando* and duly registered, cannot claim to be in any better condition than his vendor, nor plead any exception the latter could not." 2 N. S. 32; 19 L. 29; 13 L. 315; 2 R. 378; 6 R. 58; 30 An. 800; Bump on Bankruptcy, 320.

It is not necessary to enter into a discussion as to the validity of the alleged privileged claims of Leeds & Co. and others. It suffices to state that, if they had privileges they have been extinguished by their own acts and by their acquisition, together with their co-adjudicatee, of the property on which they might have operated. As owners they cannot at the same time be mortgagees and privileged creditors as to their own property. The appellee in her supplemental answer to this appeal, asks for an amendment of the judgment of the lower court, which only allows five per cent. attorney's fees on the principal of the mortgage notes. She is entitled to five per cent. attorney's fees on the amount of the debt, principal and interest until payment, the interest is a part of the debt, and this percentage should be allowed and recognized as being secured by the mortgage.

We perceive no error in the rulings of the court *a qua* on these points, to which the defendants have taken their bills of exception, to-wit: that agency to sell immovable property cannot be proved by parol evidence, nor should such evidence be admitted to contradict the written act of sale in this case.

It is, therefore, ordered, adjudged and decreed that the judgment of the Fifth District Court for the parish of Orleans, in this case, be amended by allowing five per cent. as attorney's fees on the amount of the two notes held by plaintiff, principal and legal interest thereon from the maturity thereof until paid; and that said judgment be further amended by limiting the same to the enforcement of the mortgage by seizure and sale of the mortgaged property to satisfy said judgment, and that the right be reserved to plaintiff, in the event that the mortgage property shall not sell for an amount sufficient to satisfy said judgment, to proceed in an action of indemnification against the defendant, the Factors'

NEW ORLEANS, APRIL, 1881. 465

Murphy vs. Factors' and Traders' Insurance Company et al.

and Traders' Insurance Company, for the recovery of the balance which may be due on said judgment, to the extent of the value of the mortgaged property removed and disposed of by the said defendant, and that the judgment of said lower court is in all other respects affirmed at appellees' costs.

---

## On Application for Rehearing.

The opinion of the Court was delivered by

Poché, J. Defendant's counsel, in two able and exhaustive briefs, strenuously urge upon us the reversal of our decree in this case, and glowingly picture the great hardships inflicted on their clients by the judgment rendered.

We have carefully perused a second time the voluminous evidence in the record, and we have failed to find any testimony showing conclusively that Mrs. Murphy was legally represented in the matters of the bankruptcy proceedings, the adjudication at the trustees' sale and the subsequent sale to the Factors' and Traders' Insurance Company, and that, therefore, she was bound by any of these transactions.

But in their briefs for rehearing, defendants' counsel press the following proposition which they support with great force and cogent reasoning: That the Murphy notes being endorsed in blank, and being secured by mortgage to enure to the benefit of any and all future holders of the said notes, and being in the possession of Marshall J. Smith & Co. during all these transactions, are facts which justified third parties in treating with the holders of the notes, to consider them as owners thereof. And hence they conclude that for the purposes of the issue in this case, it is a matter of indifference whether Marshall J. Smith & Co. were the agents of others or not in various transactions referred to.

It is evident that in their zeal for argument counsel have entirely lost sight of their pleadings by which, at least, they must be bound.

Their answer rests exclusively upon the alleged theory that Mrs. Murphy was bound by the acts of Marshall J. Smith & Co., her duly authorized agents and attorneys in fact, having, as *such*, the exclusive possession, management and control of her said mortgage notes, and stipulating in her behalf in all the transactions covered in the issues of this case. All the testimony which they offered and introduced on that point, was intended for the sole purpose of establishing the agency of Marshall J. Smith & Co. touching the two notes, which were through the pleadings and throughout the trial recognized and treated as the property of Mrs. Murphy.

We transcribe from their answer the following averment out of many similar allegations on this point:

30

"Defendants aver that the *two notes of plaintiff herein* were and had been in the possession of Marshall J. Smith & Co., or of Marshall J. Smith individually, who had been for a long time, and was at the date of these transactions, the only qualified attorney in fact of Mrs. Murphy."

Under such an allegation defendants could not have been allowed to show by evidence that the notes had been treated as the property of Marshall J. Smith & Co., and much less can they now be tolerated in their attempt to shift their position in the last engagement of this protracted conflict.

We find no error in our decree, and the application for rehearing must be denied.