(107 So. 584)

No. 27761.

PHILLIPS v. PHILLIPS.

(March 1, 1926.)

On Motion to Dismiss Appeal.

*(Syllabus by Editorial Staff.)*

1. **Appeal and error** ⬥⬥422—**Erroneous dating of judgment in citation of appeal and failure to allow appellee time granted by Code are not sufficient causes for dismissing appeal, if not due to fault of appellant (Rev. St. §§ 36, 1907; Code Prac. arts. 583, 898).**

Under Rev. St. §§ 36, 1907, and Code Prac. art. 898, erroneous dating of judgment in citation of appeal and failure to allow appellee time granted by article 583, are not sufficient causes for dismissing appeal, where it does not appear that errors were due to fault of appellant or her counsel, but in such case reasonable time is to be granted to correct errors if not waived by appellee.

2. **Appeal and error** ⬥⬥422—**Reasonable time to correct error in citation of appeal is granted merely for errors on part of court officers, and is not required where appellee recognizes appeal (Rev. St. §§ 36, 1907; Code Prac. art. 898).**

Rev. St. §§ 36, 1907, and Code of Practice, art. 898, providing for granting of reasonable time to correct errors in citation of appeal, is merely to protect appellant against errors of court officers, and does not apply where appellee has recognized appeal by moving to dismiss it on another ground than defect in citation, or service thereof.

3. **Husband and wife** ⬥⬥272(6)—**Act giving wife separated from husband same rights to accept or renounce community as widow held to abrogate act raising presumption of renunciation of community if not accepted by wife 30 days after separation (Rev. Civ. Code, arts. 1055, 1056, 1057, 2414, 2420; Code Prac. arts. 924, 977, 979; Act No. 4 of 1882).**

Act No. 4 of 1882, allowing divorced wife, or wife separated from husband by judicial decree, right to accept or renounce community under benefit of inventory, in same manner as heirs are allowed to accept or renounce succession, thereby giving her same rights as widow under Rev. Civ. Code arts. 1055, 1056, 1057, 2414, and Code Prac. arts. 924, 977, 979, abrogates Civ. Code, art. 2420, under which wife is presumed to renounce community if not accepted 30 days after separation is finally pronounced.

4. **Husband and wife** ⬥⬥272(6)—**Acceptance by wife of marital community is merely expression of consent to receive residue of community, without incurring any obligation.**

Acceptance by wife of marital community with benefit of inventory is merely expression of her consent to receive residue of community estate, if any, after debts of community are paid, imposing no obligation or responsibility whatever.

5. **Husband and wife** ⬥⬥265—**Wife's half interest in community property is not mere expectancy (Rev. Civ. Code, arts. 915, 916, 2404, 2420).**

Under Rev. Civ. Code, arts. 915, 916, 2404, 2420, wife's half interest in community property is not a mere expectancy during marriage, but is vested in her the moment it is acquired by the community or by spouses jointly, though acquired in name of only one of spouses.

6. **Husband and wife** ⬥⬥268(1).

Wife's interest in community is liable for half of community debts.

**7. Husband and wife ⬤⟹272(6)—Wife separated from husband is not presumed to renounce community by failure to formally accept within 30 days after decree of separation, but thereafter husband may sue to compel her to accept or renounce community (Act No. 4 of 1882; Civ. Code, arts. 1055, 1056, 2414, 2420; Code Prac. arts. 977, 979).**

Under Act No. 4 of 1882, giving wife separated from husband right to accept community on same basis as widow, wife does not forfeit her half of community property by not formally accepting it within 30 days after decree of separation as provided by Civ. Code, art. 2420, but under provisions of articles 1055, 1056, 2414, and Code Prac. arts. 977, 979, husband like any creditor of community, may after 30-day period sue to compel wife to accept, or renounce community.

**8. Divorce ⬤⟹178—Wife separated from husband suing for partition and declaring judgment of separation to be final, has no right to appeal from judgment.**

Suit for partition of community property by wife after obtaining decree of separation from bed and board, together with allegation in petition that judgment of separation was final, constitutes acquiescence in judgment of separation depriving wife of right to appeal therefrom.

Appeal from Tenth Judicial District Court, Parish of Natchitoches; J. F. Stephens, Judge.

Action by Amelia Phillips against Gabriel Phillips. From the judgment plaintiff appeals. On motion to dismiss appeal. Appeal dismissed.

H. L. Hughes and Breazeale & Breazeale, all of Natchitoches, for appellant.

Rusca & Cunningham, of Natchitoches, for appellee.

O'NIELL, C. J. The plaintiff sued for a decree of separation from bed and board, for an injunction forbidding her husband to dispose of the community property, and for a partition of the property. She prayed for and obtained a preliminary injunction and an inventory of the community property. The court gave her a decree of separation from bed and board and perpetuated the injunction forbidding the husband to dispose of the community property, but did not, in the decree, order the partition, or refer to that part of the prayer of the plaintiff's petition. The inventory of the community property was made and filed before the defendant answered the suit.

After the decree of separation was rendered, the plaintiff did not, within 30 days, formally accept the community. Eight months after the decree was rendered, she brought suit for a partition and settlement of the community estate, alleging that the judgment of separation was final. The defendant pleaded that the plaintiff had no cause or right of action, because she had not accepted the community within the 30 days after the decree of separation from bed and board was rendered. We are informed that the exception of no cause or right of action was overruled; but the ruling is not in the record in this appeal.

The argument of the exception of no cause or right of action directed the attention of the plaintiff's attorneys to the fact that the decree in the suit for separation from bed and board did not include an order for a partition of the community estate, and that the plaintiff had not formally accepted the community within the 30 days after the decree was rendered. Her attorneys, therefore, immediately asked for and were granted an appeal from the judgment rendered in the suit for separation from bed and board. The defendant, appellee, has moved to dismiss the appeal, on the grounds: First, that the citation of appeal was defective and did not allow appellee the time granted by article 583 of the Code of Practice, and, second, that the appellant acquiesced in the judgment appealed from, by suing for a partition of the community estate.

[1] The defect in the citation of appeal was that it described the judgment appealed from

as being dated the 16th of December, 1925, the day on which the appeal was taken, and the judgment was in fact dated the 16th of March, 1925. Besides, the citation of appeal was not served until five days before the return day.

The defects in the citation of appeal and the delay in serving it are not sufficient causes for dismissing the appeal, because it does not appear that the errors were due to any fault of the appellant or her counsel. Sections 36 and 1907 of the Revised Statutes and article 898 of the Code of Practice forbid us to dismiss an appeal because of any defect, error or irregularity in the petition or order of appeal, or in the citation of appeal, or the service thereof, unless it appears that the error is imputable to the appellant. The sections and article cited declare that in such cases the court shall grant a reasonable time in which to correct the errors or irregularities if they be not waived by the appellee. The statute (originally enacted as an Act of 1839, p. 170) was enacted to give sanction to the ruling (in 1836) in Guerin v. Bagneries, 9 La. 472. See Hearing v. Mound City Life Insurance Co., 29 La. Ann. 832; Borde v. Erskine, 29 La. Ann. 823; Murphy v. Factors' & Traders' Insurance Co., 33 La. Ann. 455; Austin v. Scovill, 34 La. Ann. 486; Succession of Townsend, 36 La. Ann. 447; Philips v. Her Creditors, 37 La. Ann. 701; Cockerham v. Bosley, 26 So. 814, 52 La. Ann. 67.

[2] The provision in the statute that reasonable time shall be granted the appellant to correct the error is merely to protect the appellant against the consequence of errors on the part of the officers of the court below, but does not require the appellant to obtain time or opportunity to correct such an error when the correction is not at all necessary. Hiller v. Barrow, 80 So. 538, 144 La. 282, and Taylor v. Allen, 91 So. 635, 151 La. 82. In this case it would be an idle ceremony to order that another citation of appeal should be served, after the appellee has taken cognizance of the appeal by moving to dismiss it on another ground than the defect in the citation, or service thereof. The statute, in terms, suggests that the appellee may waive any such defect in the citation or service of citation of appeal. As it would be of no benefit or advantage whatever to the appellee to be served with another citation of appeal, and as it is not asked for, we shall not order it.

On the question whether the appellant acquiesced in the judgment appealed from, the case is similar to White v. White, 95 So. 791, 153 La. 313, and 106 So. 567, 159 La. 1065, except that, in the judgment of separation from bed and board, in White v. White, the district court did not, as it did in this case, perpetuate the writ of injunction forbidding the defendant, husband, to dispose of the community property, and except also that, in White v. White, the plaintiff did not, as she did in this case, bring a new suit for a partition of the community estate. We overruled the motion to dismiss the appeal in White v. White, and amended the judgment by perpetuating the injunction forbidding the husband to dispose of the community property, and by ordering a partition of the property.

It is said that the idea of the attorneys for the appellant, in taking this appeal, was that the decree of separation from bed and board could not then be considered "finally pronounced" until the judgment should be affirmed in that respect by the supreme court; and that, under article 2420 of the Civil Code, appellant could then accept the community within 30 days after the judgment of this court would become final. The article of the Code reads:

"The wife, separated from bed and board, who has not within the delays above fixed [meaning 30 days], *to begin from the separation finally pronounced*, accepted the community, is supposed to have renounced the same; unless, being still within the term, she has obtained a prolongation from the judge, after the husband was heard, or after he was duly summoned." (The italics are ours).

[3] Our opinion is that that article of the Code has been abrogated by the Act 4 of 1882, allowing the wife, when the marital community is dissolved by a decree of separation from bed and board, or divorce, or by the death of the husband, the right to accept the community under the benefit of inventory "in the same manner and with the same benefits and advantages as heirs are allowed by existing laws to accept a succession under the benefit of inventory." It is not possible to reconcile those advantages, given by the act of 1882, with the disadvantage that was theretofore imposed by article 2420 of the Civil Code, upon the wife when the marriage was dissolved by a judicial decree. The act of 1882 puts the divorced wife, or wife separated from her husband by a decree of separation from bed and board, on the same footing with a widow, and gives to both of them, with regard to the right to accept or renounce the community, the same rights and advantages that beneficiary heirs have to accept or renounce a succession. The statute declares:

"That at the dissolution for any cause of the marriage community, it shall be lawful for the wife to accept the community of acquets and gains under the benefit of inventory, in the same manner and with the same benefits and advantages as heirs are allowed by existing laws to accept a succession under the benefit of inventory."

Before the statute of 1882 was enacted, a wife could not accept the community under the benefit of inventory, whether the community was dissolved by death or by a decree of court. If she undertook to accept under the benefit of inventory, the effect was to make her accept unconditionally and become liable for half of the debts of the community. Monget v. Pate, 3 La. Ann. 269. She had either to accept unconditionally or renounce the community. There was only this difference between the rights of a widow and those of a wife separated from her husband by a decree of divorce or of separation from bed and board: The widow was presumed to have accepted the community if she did not renounce it within 30 days after it was dissolved; whereas, the wife separated by a decree of divorce or of separation from bed and board was presumed to have renounced the community, and was forever denied the right to accept it, if she did not accept it within 30 days after final pronouncement of the decree of divorce or of separation from bed and board. The widow, therefore, according to article 2414 of the Civil Code, had the same delay (30 days) in which to make up her mind whether to accept or renounce the community, that was allowed to forced heirs in which to decide whether to accept or renounce a succession. During the delay of 30 days, the widow could not be sued for half of a debt of the community, nor an heir for a debt of the succession. After the expiration of the 30 days, the creditors of the community could sue to compel the widow to say whether she accepted or renounced the community, just as the creditors of a succession could bring suit to compel an heir to say whether he accepted or renounced the succession; and, if the widow allowed judgment to go against her by default, in such suit, she was deemed to have accepted the community and was then liable individually for half of the community debts. See Rev. Civ. Code, arts. 1055, 1056, 1057; Code of Prac. arts. 924, 977, 979; and Rev. Civ. Code, art. 2414, par. 2. In other words, the widow had the same advantages and disadvantages, with regard to accepting or renouncing the community, that beneficiary heirs had with regard to accepting or renouncing a succession, except that the widow could not accept with benefit of inventory. By the Act 4 of 1882, the wife separated from her husband by a decree of divorce or of separation from bed and board is given the same right that is given the widow to accept the community with benefit of inventory, and

both are given the same rights and advantages in that respect that heirs have with regard to the acceptance or renunciation of successions. It is utterly impossible to reconcile such rights and advantages with the obligation that was imposed upon the wife by Article 2420, to accept the community within 30 days after the rendering of a decree of divorce or of separation from bed and board, or be forever deprived of her half of the community estate.

That was observed in Schreiber v. Beer's Widow and Heirs, 91 So. 151 et seq., 150 La. 682 et seq., viz.:

"Article 1055 of the Civil Code declares that at the expiration of the term (30 days) allowed an heir for deliberating the creditors and legatees of the succession, by bringing suit for that purpose, 'can compel the heir to decide whether he accepts or rejects the succession.'

"Article 1056 declares that if, in answer to such suit, the heir declares that he accepts the succession, the estate must immediately be delivered to him, and he then becomes responsible personally for the debts of the succession, not only to the extent of the value of the estate, but to the full extent of its obligations; 'and the creditors of the deceased can obtain judgment against him.' Article 1057 declares that, if the heir allows a judgment to go by default in such a suit, 'he shall be considered an unconditional heir and be bound as such.'

"Article 924 of the Code of Practice declares: " 'Courts of probate have the exclusive power * * * to compel such heirs as have taken time to deliberate to declare, when required by the creditors of deceased, whether they accept or renounce the succession.'

"Article 977 of the Code of Practice, substantially like article 1055 of the Civil Code, declares that the creditors or legatees of a deceased person, or any of them, may, by a suit brought for that purpose, 'demand that the beneficiary heir be cited and made to declare whether he accepts or refuses the succession.' Article 979 declares that, if the presumptive heir has not prayed for time to deliberate, any creditor or legatee of the deceased may, ten days after the opening of the succession, 'cite such heir to appear before the judge of probate, and call on him to declare whether he accepts the succession or refuses it.' And article 980 declares: " 'If the heir thus cited declares that he accepts, or if he be silent or make default, he shall be considered as having accepted the succession purely and unconditionally, *and may be sued as if he had done so.*' (The italics are by the court.) * * *

"Article 2414 of the Civil Code declares that a widow is allowed the same delay for deciding whether she will accept or renounce the marital community that is allowed a beneficiary heir for deciding whether he will accept or renounce the succession; and that 'after the expiration of these delays she may be, in the same manner, forced to make her decision, and judgment may be rendered against her as a partner, unless she renounces.'

"Act 4 of 1882 declares:

" 'That at the dissolution for any cause of the marriage community, it shall be lawful for the wife to accept the community of acquets and gains under the benefit of inventory, in the same manner and with the same benefits and advantages as heirs are allowed by existing laws to accept a succession under the benefit of inventory.'

"In Herman v. Theurer, 11 La. Ann. 70 (in 1856), it was said:

" 'Where the community is dissolved by the death of the husband, the surviving wife is presumed to have *the intention to accept,* * * * *and her right to renounce is subject to the same rules as govern the beneficiary heir.* But a different rule prevails where a divorce has been pronounced. Unless the wife accepts the community within the delay allowed by law, or obtains from the judge a prolongation of that delay, she is supposed to have renounced the community. Code, 2389.' R. C. C. 2420 (The italics are by the court.)

"It is plain, therefore, that the question of responsibility of a widow for one-half of the community debts is governed by the same rules, and must be determined by the same method, that the Civil Code and the Code of Practice have established for determining the responsibility of the beneficiary heir for the debts of the succession. The rule, however, before the enactment of the statute of 1882, was not the same when the marital community was dissolved by a judicial decree. In that case, by the terms of article 2420 of the Civil Code, if the wife did not accept the community within the prescribed time, she was supposed to have renounced it irrevocably."

In the Succession of Richardson, 14 La. Ann. 1, decided in 1859, it was said:

"Where the widow has caused an inventory to be taken of her deceased husband's estate, she has the privilege of renouncing the community, as long as the creditors have taken no steps to compel her to accept or renounce."

The reason for the ruling was that, under article 2414 (then 2383 which the court cited), the widow had the right to accept or renounce the community at any time until she was put in default by a suit to compel her to elect either to accept or to renounce the community; and now, by the statute of 1882, the wife separated from her husband by divorce or by a decree of separation from bed and board has the same benefits and advantages in that respect that a widow or a beneficiary heir has.

In Titche v. Lee, 22 La. Ann. 435 (in 1870), it was said:

"It would seem, however, that the surviving wife has the thirty days allowed to a beneficiary heir, to make a choice between renunciation and acceptance. After the expiration of this delay she may be forced, by suit, to make her decision, in the same manner as an heir, and then judgment may be rendered against her personally if she does not renounce. Thus she has for thirty days, a right of deliberation, and her deliberations cannot be disturbed by the action to compel a choice. But after this delay has expired she still has a right of renunciation, for, in the action to compel, a judgment is to be rendered against her personally 'unless she renounces.' The phrase implies a continued power of renunciation."

In Ludeling v. Felton, 29 La. Ann. 719 (in 1877) it was said that, when the marital community was dissolved by the death of the husband, the widow who did not formally renounce the community within 30 days was presumed to have accepted it, although, when the community was dissolved by a judicial decree, the wife was presumed to have renounced the community if she did not accept it within the 30 days. Referring to that decision, in the late case of Shreiber v. Beer's Widow and Heirs, supra, we said:

"The case was decided before the enactment of Act 4 of 1882, which makes no distinction between a dissolution of the community by death of the husband and a dissolution by judicial decree."

It is true that, in Weller v. Von Hoven, 7 So. 702, 42 La. Ann. 600, this court expressed the opinion that article 2420 of the Civil Code was not repealed or abrogated by the Act 4 of 1882; but the reasons that were given are not convincing. It was said that the only object of the statute was to authorize the wife to accept the community under benefit of inventory, so that she would incur no liability beyond the value of her half of the community property. If that had been the only object of the statute—if the Legislature had not intended to relieve the divorced wife, or wife separated from her husband by a decree of separation from bed and board, from the provisions of article 2420 of the Civil Code—the statute would have been confined in its application to a dissolution of the community by death of the husband, instead of being applicable to a dissolution by divorce or by separation from bed and board; and the statute would not have given to the wife, in case of dissolution of the community "for any cause," the same benefits and advantages that heirs are allowed with regard to accepting or renouncing a succession.

It has been said that article 2420 of the Civil Code applied to a wife who had obtained only a decree of separation of property, without a divorce or separation from bed and board. See Audrich v. Lamothe, 12 La. Ann. 76; Williamson v. Amilton, 13 La. Ann. 389; and Succession of Le Besque, 68 So. 956, 137 La. 567. The language of the article did not make it applicable to a decree dissolving the community, without granting a divorce or separation from bed and board. Besides, Audrich v. Lamothe and Williamson v. Amilton were decided before the statute of 1882 was enacted; and in the Succession of Le Besque the reference to article 2420 of the Code was not pertinent to the question before the court, and was made without regard to the Act of 1882.

[4] For the wife to accept the marital community with benefit of inventory is nothing more than an expression of her consent to receive the residue of the community estate, if

there be any, after the debts of the community are paid. The wife thereby incurs no obligation or responsibility whatever. If the Civil Code had given the wife that privilege, there would have been no reason or place in the Code for the provisions of article 2420. Ratione cessante, cessat etiam lex. The reason underlying article 2420, which reason ceased with the enactment of the statute of 1882, was stated in Herman v. Theurer, 11 La. Ann. 72, thus:

"The reason for the rule is doubtless this: the husband is the head and master of the community, and at once responsible for its debts, and being seized of it, he ought not to be compelled to demand a partition of the wife of the effects in his hands, and thus lessen his means to meet the debts, particularly as he is responsible for the whole, *whilst his wife, by acceptance, would only be responsible for one-half of the same. The interest of the creditors and the public requires that the delay allowed the divorced wife to accept should be, as provided by the Civil Code, a short one.*"

Now that the wife has the right to accept the community with benefit of inventory, and without being liable for any of the community debts, it is not in the interest of the creditors, or the husband, or of any one else, that the wife should be deprived of her half of the community estate if she does not accept it within 30 days.

[5, 6] There is less reason for a presumption that the wife has tacitly renounced her half of the community estate, merely because she did not formally accept it within 30 days after the community was dissolved, than there would be for a presumption that an heir has tacitly renounced the succession if he has not accepted it formally within 30 days after it was opened. The wife's half interest in the community property is not a mere expectancy during the marriage; it is not transmitted to her by or in consequence of a dissolution of the community. The title for half of the community property is vested in the wife the moment it is acquired by the community or by the spouses jointly, even though it be acquired in the name of only one of them. Rev. Civ. Code, art. 2420. The wife's half of the community property is liable, of course, for half of the community debts, just as the half interest of one of two joint owners of property is liable for half of the debts contracted by the other joint owner under a procuration to administer and dispose of the property for the mutual benefit of the joint adventure. There are loose expressions, appearing in some of the opinions rendered by this court, to the effect that the wife's half interest in the community property is only an expectancy, or a residuary interest, until the community is dissolved and liquidated. But that is contrary to the provisions of the Civil Code, particularly articles 915, 916, and 2404, and is contrary to the rule announced in every decision of this court since the error was first committed, in Guice v. Lawrence, 2 La. Ann. 226, in 1847. It had been decided, in Dixon v. Dixon's Ex'rs, 4 La. 188, 23 Am. Dec. 478, in 1832, and was repeated in Theall v. Theall, 7 La. 226, 26 Am. Dec. 501, in 1834, that the wife had not a mere expectancy but the absolute ownership of half of the community property during the existence of the community, subject, of course, to the husband's power of administration. The statement to the contrary in Guice v. Lawrence was an error, resulting from a wrong translation of the Spanish word *dominio*, used by the commentator, Febrero. He used the word *dominio* as meaning *dominion* or *control*, but not *ownership*, in describing the authority of the husband over the community estate. Guice v. Lawrence was cited by the Supreme Court of New Mexico in Arnett v. Reade, 31 S. Ct. 425, 220 U. S. 311, 55 L. Ed. 477, 36 L. R. A. (N. S.) 1040, but Mr. Justice Holmes, for the Supreme Court of the United States, pointed out the error in the translation of the Spanish word *dominio*, which the Spanish commentators had

used somewhat indiscriminately, sometimes as meaning *ownership* and sometimes *control*. Guice v. Lawrence was, in effect, overruled, and the doctrine of Dixon v. Dixon's Ex'rs and Theall v. Theall was reinstated, by the rulings in Succession of Marsal, 42 So. 778, 118 La. 212; Succession of May, 45 So. 551, 120 La. 692; and Beck v. Natalie Oil Co., 78 So. 430, 143 La. 154. The doctrine of the latter cases was observed and adhered to by the United States District Court for the Western District of Louisiana in Liebman v. Fontenot, 275 F. 688; and it is recognized in the decisions of the Supreme Court of the United States, viz., Warburton v. White, 20 S. Ct. 404, 176 U. S. 484, 44 L. Ed. 555, and Arnett v. Reade, 31 S. Ct. 425, 220 U. S. 311, 55 L. Ed. 477, 36 L. R. A. (N. S.) 1040; and in the decisions of the courts of last resort in six of the other seven states where the marital community prevails (California being the only exception), viz.: La Tourette v. La Tourette, 137 P. 426, 15 Ariz. 200, Ann. Cas. 1915B, 70; Kohny v. Dunbar, 121 P. 544, 21 Idaho, 258, 39 L. R. A. (N. S.) 1107, Ann. Cas. 1913D, 492; Beals v. Ares, 185 P. 780, 25 N. M. 459; In re Williams, 161 P. 741, 40 Nev. 241, L. R. A. 1917C, 602; Holyoke v. Jackson, 3 P. 841, 3 Wash. T. 235; Mabie v. Whittaker, 39 P. 172, 10 Wash. 656; Marston v. Rue, 159 P. 111, 92 Wash. 129; Schramm v. Steele, 166 P. 634, 97 Wash. 309; and Huyvaerts v. Roedtz, 178 P. 801, 105 Wash. 657.

It is true that Guice v. Lawrence was cited as if with approval in Tourne v. His Creditors, 6 La. 459, in Tourne v. Tourne, 9 La. 452, and in Landreaux v. Louque, 9 So. 32, 43 La. Ann. 234, and the latter case was cited as if with approval in Peck v. Board of Directors of Public Schools, 68 So. 629, 137 La. 334; but the court, in those cases, overlooked the fact that Guice v. Lawrence had been, in effect, overruled. The ruling in each of the cases in which Guice v. Lawrence was cited was correct, and what was said with regard to Guice v. Lawrence was not at all necessary for the decision. The same may be said of some of the expressions in Jacob v. Falgoust, 90 So. 426, 150 La. 21, which seem contrary to the true doctrine that the wife really owns half of the community property while the community exists. In the case of Wand v. Wand, 99 So. 211, 155 La. 257, which was decided when the court was working in sections or divisions and under pressure, Act No. 4 of 1882 was not cited or referred to.

[7] It would be unreasonable, therefore, and very unfair, now that the wife who has obtained a divorce or decree of separation from bed and board may accept the community without incurring any responsibility whatever and with the same rights and advantages with which a widow may accept, or with which an heir may accept a succession, to say that the wife forfeits her half of the community property if she does not formally accept it within 30 days after a decree of divorce or of separation from bed and board has been rendered. That is not consistent with the provisions of the Act 4 of 1882 and is not the law.

The appellant in this case, having, under the Act 4 of 1882, after she had obtained the decree of separation from bed and board, the same rights and advantages with regard to the community estate as if the community had been dissolved by the death of her husband, did not forfeit her half of the community property by her failure to accept the community within 30 days after the decree of separation was rendered. The husband, like any creditor of the community, had the right, at the expiration of the 30 days, to sue to compel the wife to say whether she accepted or renounced the community, under the provisions of articles 1055, 1056, and 2414 of the Civil Code and articles 977 and 979 of the Code of Practice. But the wife is not presumed to have renounced the community.

[8] By suing for a partition of the commu-

nity property, and by alleging in her petition in the partition suit that the judgment of separation from bed and board was final, the plaintiff acquiesced in the judgment and had no right thereafter to appeal from it. It is conceded that the only purpose of the appeal is to postpone the finality of the judgment of separation from bed and board, and thereby avoid the forfeiture provided for in article 2420 of the Civil Code. As we have concluded that the article of the Code was abrogated by the Act 4 of 1882, and that the appellant therefore has no interest in prosecuting this appeal, we have nothing else to do but to dismiss it, reserving to the appellant her right to proceed with her partition suit in the district court. That is not the way we disposed of the appeal in White v. White, but the result was the same. The act of 1882 was not cited or referred to in that case, and the facts were not quite the same as in this case.

The appeal is dismissed, at appellant's cost, reserving her right to proceed with her suit in the district court for a partition and settlement of the community estate.